**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aurora Mercy Delgado, | No. CV-23-02515-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

On February 19, 2020, Aurora Delgado ("Claimant") filed an application for Social Security Disability Insurance benefits, alleging disability beginning January 29, 2020. (AR 19.) The state agency denied her claim initially on May 28, 2020, and again on reconsideration on September 22, 2020. (AR 60, 69.) After an administrative hearing, the Administrative Law Judge ("ALJ") issued an unfavorable decision on May 21, 2022, finding Claimant not disabled. (AR 31.) The Appeals Council denied review of the decision, making the ALJ's decision the final decision of the Commissioner of the Social Security Administration. (AR 1–3.) Claimant seeks judicial review of the Commissioner's decision under 42 U.S.C. § 405(g).

**I.    Standard**

An ALJ's factual findings are "conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quotation and citation omitted). Substantial evidence is "more than a mere scintilla" and "means—and means only—such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (quotations and citations omitted). "When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). The substantial evidence standard is a "highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 690 (9th Cir. 2009). In its review of an ALJ's decision, the Court reviews only those issued raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

To determine whether a claimant is disabled, the ALJ engages in a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at the fifth step. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At the second step, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically determined to be disabled. If not, the ALJ moves to the fourth step, where he assesses the claimant's residual functioning capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant is not so capable, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

**II.     Analysis**

    **a.  Claimant's Symptom Testimony**

When assessing the severity of claimant's testimony regarding the severity of her pain and symptoms, an ALJ must engage in a two-step analysis. *Ferguson v. O'Malley*, 95

F.4th 1194, 1199 (9th Cir. 2024). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quotation and citation omitted). The claimant does not need to show her impairment "could reasonably be expected to cause the severity of the symptom," only that "it could reasonably have caused some degree of the symptom." *Id.* (quotations and citation omitted). If the claimant satisfies the first step, the ALJ may reject her testimony regarding the severity of her symptoms only "by offering specific, clear and convincing reasons for doing so." *Ferguson*, 95 F.4th at 199 (quotation and citation omitted). This Court will uphold the ALJ's decision so long as he has provided legally sufficient reasons for rejecting the claimant's testimony, even if the ALJ did not "clearly link his determination to those reasons." *Lewis*, 236 F.3d at 512; *see also Alaska Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 497 (2004) ("Even when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned.") (quotations and citation omitted).

Claimant alleges that her impairments do not allow her to sit, stand, or walk for more than 10-20 minutes; cause back pain affecting her sleep; and create difficulty lifting, squatting, bending, and stairclimbing. (AR 288, 292, 296.) The ALJ found objective evidence supports the following impairments: "fibromyalgia, degenerative disc disease of the cervical spine, obesity, and osteoarthritis," which could reasonably be expected to produce the symptoms Claimant alleged. (AR 23, 26.) However, the ALJ determined Claimant's testimony regarding "the intensity, persistence and limiting effects of these symptoms" was not "consistent with the medical evidence and other evidence in the record." (AR 26.)

Claimant argues the ALJ erred by (1) discounting her symptom testimony based only on his own summary of the medical evidence and (2) failing to "connect anything specific in the records summarized" to "any specific inconsistency in [Claimant's]

symptom testimony." (Doc. 12 at 10–11.) The Court disagrees on both points. Instead, the ALJ properly relied on what he reasonably determined to be inconsistencies between the severity of symptoms Claimant described and the objective medical findings and effectiveness of Claimant's treatment plan. (AR 26–28.) In doing so, the ALJ did not discredit Claimant's testimony based on "a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Instead, the ALJ determined Claimant's testimony was inconsistent with objective medical evidence, thus the "ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022).

For example, when considering Claimant's testimony regarding her back pain, the ALJ noted cervical imaging from Claimant's spine showed only "moderate disc space height loss at C5-6 and C6-7" and "'mild' multilevel facet arthropathy." (AR 26.) Although the ALJ noted "claimant was diagnosed with cervical stenosis" making Claimant a "surgical candidate," the ALJ also considered imaging from April 2021 finding only "moderate canal stenosis" and the interpreting physician's description of the imaging as "mild to moderate." (AR 26, 750.)

Regarding Claimant's testimony alleging an inability to sit or stand for longer than 20 minutes and to "lift, squat, bend, stand, reach, walk, sit, kneel, and climb," the ALJ observed Claimant's knee exams in August 2019 showed "no fracture or dislocation." (AR 26.) The ALJ also relied on feet imaging showing "only 'mild' degenerative changes" and "'mild' bilateral calcaneal spurring." (AR 26.) Finally, the ALJ noted Claimant's hand X-rays in August 2019 reported as "unremarkable," and multiple providers consistently noted Claimant as having "normal gait strength and muscle tone" in general examinations. (*E.g.*, AR 439, 565, 610.)

The ALJ also considered evidence that Claimant's symptoms improved with treatment. For example, ALJ noted that Claimant "has the requisite number of tender point findings" to establish an impairment of fibromyalgia, but the objective medical evidence did not support the severity of symptoms Claimant alleged, in part because Claimant

reported improvement when taking Cymbalta and Celebrex. (AR 27, 565.)

The ALJ reasonably found that the severity of symptoms Claimant testified to inconsistent with the objective medical evidence, including the effectiveness of treatment. The Court finds no reversible error.

### b.  Dr. Rogers' Assessment

For claims filed on or after March 27, 2017, ALJs give no specific evidentiary weight, including controlling weight, to any medical opinion. 20 C.F.R. § 416.920c(a). Instead, the regulations require that the ALJ consider all medical opinions and articulate how persuasive he finds them. *Id.* at § 416.920c(b). The revised regulations provide that treating physician's assistants are considered medical sources. *Id.* § 416.902(a)(8).

The ALJ considers several factors in assessing the persuasiveness of a medical opinion, but he need only articulate in his decision his findings regarding the supportability and consistency of the opinion with other evidence in the record. *Id.* § 416.920c(b)(2). Supportability refers to the supporting explanations and objective medical evidence offered by the source to justify her medical opinion. *Id.* § 413.920c(c)(1). Consistency refers to the uniformity and agreement amongst the evidence from other medical and nonmedical sources. *Id.* § 416.920c(c)(2).

The ALJ properly found unpersuasive the opinions of Philio Rogers, D.O. "limiting the claimant to a reduced sedentary residual functional capacity." (AR 28.) The ALJ found that Dr. Rogers based his opinion on Claimant's own self-reporting and "not on objective evidence in the records." (AR 29.) Because the ALJ reasonably found Claimant's reported symptoms to be inconsistent with the objective medical evidence, the ALJ by extension reasonably discounted the opinions of Dr. Rogers to the extent they were based on those same subjective reports.

The ALJ noted the opinions of Dr. Rogers lacked support from the objective medical evidence in the record. Specifically, the ALJ found Dr. Rogers' "*own* records do not support" the limitations contained in his opinions. (AR 29) (emphasis added). For example, Dr. Rogers opined the Claimant's impairments would cause six or more absences from

work each month; limit sitting or standing to less than two hours at a time; and limit Claimant's ability to lift and/or carry more than 10 pounds. (AR 563, 664.) The ALJ found that Dr. Rogers' general examination did not support these limitations. (AR 29.) Instead, Dr. Rogers, in his general examination, found Claimant to have normal heart, lung, extremity, and neuroglial functions along with normal, strength, tone, gait and no CVA tenderness. (AR 639.) Accordingly, the ALJ found the objective medical evidence in the record did not "support the disabling limitations in the opinions of Dr. Rogers." (AR 29.)

The ALJ also found Dr. Rogers' opinion was inconsistent with objective medical evidence from other medical sources within the record. In making this determination, the ALJ relied on much of the same objective evidence cited when discounting Claimant's symptom testimony. (AR 29.) For example, ALJ noted Dr. Rogers' opinion was not consistent with imaging conducted in April 2021 confirming only "moderate canal stenosis" and "mild to moderate bilateral neural foraminal stenosis." Similarly, knee X-rays in August 2019 showed no "fracture or dislocation", feet imaging showed only "mild" degenerative changes and "mild" bilateral spurring, and hands X-rays in August 2019 were "unremarkable." (AR 29.) Finally, the ALJ relied on previous general examinations showing Claimant had "normal strength and muscle tone." (*E.g.*, AR 439, 565, 610.) The ALJ reasonably found the opinions of Dr. Rogers lacked consistency with objective medical evidence in the record. The Court finds no reversible error.

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED.** The Clerk is directed to enter judgment accordingly and terminate this case.

Dated this 19th day of February, 2025.

Douglas L. Rayes
Senior United States District Judge